UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X
                             :

NING YE,                               :

                      Petitioner,     :

                               :        20 Civ. 11072 (JPC)

      -v-                      :

                               :          OPINION

NEW YORK BOARD OF ELECTIONS,      :    AND ORDER

                               :

                    Respondent.   :

                               :
-------------------------------------------------------------------X

JOHN P. CRONAN, United States District Judge:

On December 30, 2020, Ning Ye ("Ye"), proceeding *pro se*, filed an "urgent petition for temporary restraining order" against the New York Board of Elections ("Board of Elections" or "Board") relating to the United States presidential election held on November 3, 2020. Dkt. 1. Ye has not filed a Complaint. The undersigned was assigned to this case on January 4, 2021. The injunctive relief that Ye seeks is difficult to parse, but the Court understands him to be seeking a temporary restraining order ("TRO") enjoining the Board of Elections from continuing to count votes, ordering the Board to deduct certain votes from the State of New York's total vote count, and ordering the Board to show cause why the Court should not order a recount or a new election. For the reasons that follow, Ye's petition for a TRO is denied.

## I. Factual Allegations

Because Ye has not filed a complaint, the following factual allegations are taken from his petition for a TRO, Dkt. 1, and accompanying affidavits from Ye and Shuqin Xu ("Xu"), who Ye identifies as a volunteer poll monitor and his "eyewitness," Dkts. 1-1, 1-2 at 8-9. Ye alleges that, on November 3, 2020, he went to a poll site in Flushing, Queens, joined by Xu. Dkt. 1-1 at 1. A

poll worker checked his voter registration and apparently told Ye that he was at the wrong location. *Id.*  But rather than direct Ye to go to a different location, the poll worker informed Ye that he could fill out an affidavit, presumably to affirm that he lived at an address within that poll site's area of the City.  *Id.*  Ye cast his vote for President Donald J. Trump and other Republican candidates, and submitted his ballot and affidavit to the poll worker.  *Id.*  Ye claims that this person "carefully checked every item" and told him that "everything [was] perfectly done" and that his ballot would be counted.  *Id.*

On December 28, 2020, Ye received a letter from the Board of Elections that informed him that his ballot was not counted because he voted at the wrong poll site.  *Id.*; Dkt. 1-2 at 2.  He further alleges that the Board declared his affidavit "invalid."  Dkt. 1-1 at 2; Dkt. 1-2 at 6.  Ye argues that "[t]he only logical reason for the New York Board of Elections to declare [his] lawfully cast ballot invalid and uncounted is because [he] was found politically incorrect to have voted for President Donald Trump."  Dkt. 1-1 at 3.

Xu alleges similar facts in her affidavit.  Dkt. 1-2 at 8-9.  She claims that when she and Ye arrived at the poll site on November 3, 2020, a poll worker informed her that her prior poll site was at a different location in Flushing and directed her to complete an affidavit.  *Id.* at 8.  She reports that she voted for President Trump, and the poll worker accepted her ballot.  *Id.*  Xu claims that on December 28, 2020, she too received a letter from the Board of Elections that stated that her vote was not counted because she voted at the wrong poll site.  *Id.*; *see also* Dkt. 1-2 at 11.

Ye alleges that the Board of Elections "knowingly or recklessly engaged in aggravated election frauds which have already resulted in massive scale constitutional violations" and disenfranchised him and other New Yorkers by invalidating their votes.  *See* Dkt. 1-1 at 3-4.  But Ye admits he is unaware "how many Trump ballots have been either discarded or invalidated one

way or another." *Id.* at 3.

Ye asks the Court to enjoin the Board from "continuing [to] disenfranchise[] [Ye] and all the similarly situated victims of such disenfranchisement, whose number and identity must be found through recounting and such other proper and practicable inspection and voting related forensic vote auditing." Dkt. 1 at 7.  He also contends that "the election counts within the jurisdiction of the [Board] should be temporarily frozen[] and deducted from the count of that of the State of New York." *Id.*  Finally, he requests that the Court order the Board of Elections to show cause why this TRO should not be issued and why the Court should not order other "just and proper" relief, such as a recount or a new election. *Id.* at 3-4, 8.[1]

## II.  Legal Standard

"In the Second Circuit, the standards for a temporary restraining order and preliminary injunction are the same." *Lee v. Trump*, No. 20 Civ. 2034 (JPO), 2020 WL 4547225, at *1 (S.D.N.Y. Aug. 6, 2020).  To obtain a preliminary injunction, a plaintiff must show (1) "a likelihood of success on the merits," (2) "that [the plaintiff] is likely to suffer irreparable injury in the absence of an injunction," (3) that "the balance of hardships tips in the plaintiff's favor," and (4) "that the public interest would not be disserved by the issuance of [the] injunction." *Id.* (alterations in original) (quoting *Salinger v. Colting*, 607 F.3d 68, 79-80 (2d Cir. 2010)).  Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y., Inc.*, 409 F.3d 506, 510 (2d Cir. 2005) (internal quotation marks and citation omitted).

---

[1] In his affidavit, Ye also mentions that he "seeks a preliminary injunction." Dkt. 1-1- at 3. This is Ye's only mention of this type of relief, and the Court does not understand him to be seeking a preliminary injunction at this time.  In any event, a preliminary injunction would be inappropriate for the same reasons that the Court denies Ye's petition for a TRO.

### III.  Analysis

Ye never filed a complaint in this case.  Instead, he filed a "petition" seeking injunctive relief and asked the Court to allow him "to submit the full length Bill of Complaint by the Court designated deadline after this TRO Petition was firstly filed and docketed."  Dkt. 1 at 5-6.

A party begins a civil action "by filing a complaint with the court."  Fed. R. Civ. P. 3.  "Prior to the filing of a complaint a court lacks subject matter jurisdiction and is powerless to grant preliminary injunctive relief."  *Nelson v. Helmick*, No. 17 Civ. 6564 (MAT), 2017 WL 3613484, at *1 (W.D.N.Y. Aug. 23, 2017) (quoting *Williams v. State Univ. of N.Y.*, 635 F. Supp. 1243, 1246 (E.D.N.Y. 1986)); *see also Powell v. Rios*, 241 F. App'x 500, 505 n.4 (10th Cir. 2007) ("Absent a properly-filed complaint, a court lacks power to issue preliminary injunctive relief."); *Hernandez v. Sullivan*, No. 18 Civ. 606 (SMY), 2018 WL 1757601, at *2 (S.D. Ill. Apr. 12, 2018) ("Plaintiffs' request for injunctive relief is improper in any event because they have not actually initiated a lawsuit . . . because Plaintiffs failed to file a Complaint."); *LeBoeuf, Lamb, Green & MacRae, LLP v. Abraham*, 180 F. Supp. 2d 65, 69 (D.D.C. 2001) ("When no complaint is filed, the court lacks jurisdiction to entertain the plaintiff's petition for injunctive relief.").  Ye seeks a TRO untethered to a pleading that states a claim for relief, and thus the Court is unable to determine whether his claims might have a "likelihood of success on the merits."  *See Tapang v. Wells Fargo Bank, N.A.*, No. 12 Civ. 2183 (LHK), 2012 WL 3778965, at *2 (N.D. Cal. Aug. 30, 2012) ("Because Plaintiff failed to file a complaint with her *ex parte* TRO application . . . the Court was unable to determine what causes of action Plaintiff was asserting nor whether she demonstrated a likelihood of success on the merits.").  Ye's failure to file a complaint to initiate this civil action, by itself, is grounds for this Court to deny his petition for a TRO.

The fact that Ye is proceeding *pro se* does not change this.  Although *pro se* plaintiffs are

ordinarily afforded a "special solicitude" that entails "liberal construction of pleadings [and] motion papers" and "leniency in the enforcement of other procedural rules," "a lawyer representing himself ordinarily receives no such solicitude at all." *Tracy v. Freshwater*, 623 F.3d 90, 101-02 (2d Cir. 2010). Because Ye is an attorney, the Court affords him no special solicitude and does not construe his filings liberally. The Court thus declines to construe Ye's petition for a TRO as a complaint.

However, even if the Court were to construe Ye's petition as a complaint and a motion for a TRO wrapped into one filing, thereby giving the Court jurisdiction here, it would still deny Ye's request for injunctive relief. Ye appears to allege that the Board of Elections violated his rights under 52 U.S.C. §§ 10101, 20701, and the Equal Protection Clause of the Fourteenth Amendment. *See* Dkt. 1 at 4.[2] But his petition for a TRO offers no cogent explanation of the bases for any of these alleged causes of action, and falls well short of establishing a likelihood of success on the merits of those causes of action. Instead, Ye's petition for a TRO amounts to a string of conclusory assertions and unsupported speculation. *See, e.g.*, Dkt. 1 at 4 ("There must be [an] enormous number of voters for President Donald Trump and GOP candidates [who] were similarly disenfranchised."); Dkt. 1-1 at 3 (suggesting that the alleged election frauds have threatened "collective safety against likely foreign invasion"). He offers no facts suggesting that the Board "disenfranchised [him] simply because [he] voted for President Donald Trump." *Id.* at 2. And even if he had, Ye fails to explain why he would be entitled to a Court-ordered recount, Dkt. 1 at 7, a Court-ordered "statewide re-election" monitored by "Court appointed independent monitors," Dkt. 1-1 at 3, or any of the other remedies he seeks. *See McMillan v. N.Y. State Bd. of Elections*, No. 12

---

[2] Although Ye claims relief under 42 U.S.C. § 1974, the Court construes this as a claim under 52 U.S.C. § 20701 because 42 U.S.C. § 1974 was later codified at 52 U.S.C. § 20701. Ye also claims that the Board violated his rights under "42 USC § 1965." Dkt 1 at 4. This is not a section of the United States Code, and the Court is left unable to deduce which statute Ye intended to cite.

5

Civ. 302 (JG), 2012 WL 909934, at *3 (E.D.N.Y. Mar. 16, 2012) (denying a request for a preliminary injunction ordering a recount of a New York state election because the plaintiff did not "alleg[e] that the determination of the winner [was] at stake"); *Baber v. Dunlap*, 349 F. Supp. 3d 68, 79 (D. Me. 2018) (denying a motion for a TRO, in part, because "[p]laintiffs have not provided the [c]ourt with any reasoned argumentation, supported by citation to authority, on the specific topic of why the remedy they propose is the remedy they are entitled to").

Moreover, Ye fails to explain how enjoining the Board of Elections in any capacity would redress the harms alleged.  Ye does not allege facts establishing that New York is still counting ballots, nor does he allege that the Electoral College has yet to hold its vote.  To the contrary, the electors of each state were required to vote by December 14, 2020.  *See* 3 U.S.C. § 7 (explaining that the electors of each state vote on "the first Monday after the second Wednesday in December" of an election year).  It is unclear from the face of Ye's petition that a TRO against the Board would have any effect on anything related to the 2020 presidential election.  The Court therefore concludes that Ye has not demonstrated a likelihood of success on the merits.

Ye does not fare any better under the other three factors that the Court would consider in evaluating whether a TRO is proper.  As for irreparable harm, Ye fails to offer anything beyond conclusory statements.  *See, e.g.*, Dkt 1-1 at 3 (arguing Ye, similarly situated persons, and "the vital interests of the United States" "will suffer irreparable harm absent the requested temporary restraining order").  This is not enough to warrant the drastic relief he seeks.  Ye also has not shown that the balance of hardships tips in his favor.  And the Court is hard-pressed to see how the public interest would be served by intervening in a past election in such a drastic way based on the limited and scant factual allegations here.  Therefore, even if the Court were to consider Ye's petition for a TRO under the applicable standard, it would deny his request because he has failed to show that

this "extraordinary and drastic remedy" is warranted under the circumstances.  *Moore*, 409 F.3d at 510 (internal quotation marks and citation omitted).

## IV. Conclusion

For the foregoing reasons, Ye's motion for a TRO is DENIED.  The Clerk of Court is respectfully directed to terminate the motion pending at Docket Number 1.

As previously directed by the Clerk of Court, Ye must file a complaint by January 11, 2021 in order to initiate this litigation.  If he fails to do so, the Court will direct the Clerk of Court to close this case at that time.

The Clerk of Court is respectfully directed to mail a copy of this Opinion and Order to Ye.

SO ORDERED.

Dated: January 5, 2021
       New York, New York

_____
            JOHN P. CRONAN
       United States District Judge